## Wolfe *v.* Riggle, Appellant.

Argued March 16, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*William A. Challener, Jr.,* with him *Francis H. Patrono,* for appellant.

*William C. Porter,* with him *James L. O'Dea,* and *Melvin M. Belli,* of the California Bar, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, April 17, 1962:

Did the court below abuse its discretion in granting a new trial?

On March 22, 1957, in the Court of Common Pleas of Washington County, Mary E. Wolfe instituted a malpractice action against Dr. Paul P. Riggle.[1] The matter was tried before Judge D. H. WEINER and a jury and, after a trial lasting well over a week, the jury returned a verdict in favor of Dr. Riggle and against Miss Wolfe.

Within less than twenty-four hours[2] after the verdict, Judge WEINER made an order granting a new trial

---

[1] Miss Wolfe alleged that Dr. Riggle performed an appendectomy upon her and, in the performance thereof, improperly administered a spinal anesthesia and, post-operatively, neglected to treat and advise her properly. As a result of such conduct, it was alleged that Miss Wolfe suffered a "foot drop" and other serious, disabling injuries.

[2] The verdict was returned on November 30, 1961 at about 7:45 p.m. The order is dated December 1, 1961. In exceptions to

and assigning his reasons therefor.[3] *This order was entered ex parte: no notice whatsoever was given either to the parties or their counsel and no motion for a new trial had been made on behalf of Miss Wolfe.*

In Judge WEINER's order he specifically set forth why he granted a new trial: (1) after rendition of the verdict four jurors told the court the verdict did not represent their true convictions, that they were led to believe they could not return a "compromise verdict" and wanted the court to call the jury back to reconsider the verdict; (2) W. C. Engle, a juror, failed to reveal *to the court* that, in a lawsuit pending on the same trial list, he was represented by Mr. Patrono, one of Miss Wolfe's counsel and the failure of both the juror and the attorney to reveal such fact to the court was improper and a breach of their duties to the court. *At that time* no other reason was assigned.

The first reason upon which the court relied is without merit. In *Friedman v. Ralph Brothers, Inc.,* 314 Pa. 247, 249, 171 A. 900, we said: ". . . we cannot accept the statement of jurors as to what transpired in the jury room as to the propriety or impropriety of a juror's conduct . . . To do so, would destroy the security of all verdicts and go far toward weakening the efficacy of trial by jury . . . *Jurors cannot impeach their own verdict.*" (Emphasis supplied). See also: *Commonwealth v. Johnson,* 359 Pa. 287, 59 A. 2d 128; *Commonwealth v. Newcomer,* 183 Pa. Superior Ct. 432, 132 A. 2d 731.

In *Havranek v. Pittsburgh,* 344 Pa. 375, 25 A. 2d 703, where four jurors, after rendition of a verdict, expressed their dissatisfaction therewith, this court did not sanction the award of a new trial on that ground. Jurors must not be permitted to impeach their own

---

this order, it is averred that the "order was made . . . *within an hour* after the verdict . . . was received . . ." (Emphasis supplied)

[3] CARSON, P. J., and CUMMINS, J., concurred therein.

verdict. In this connection it may be noted that the better practice would have been for the trial court to have talked with the jurors only in the presence of counsel.

The second reason assigned for the award of the new trial was the failure of the juror Engle to reveal *to the court*—not to opposing counsel—his representation by Dr. Riggle's counsel in another lawsuit. Wherein failure to reveal this fact *to the court* constitutes improper conduct is not clear: concealment of such fact *from opposing counsel,* of course, would be improper. In evaluating this reason, certain factual background must be considered. On the trial at the same term of court there was listed a trespass action of one Emil Sposato v. W. C. Engle (the juror) et al. In that action *both* Mr. Porter and Mr. Patrono represented Engle:[4] thus, when Engle was selected, each counsel had full knowledge of the dual representation of Engle. Moreover, after the completion of the voir dire of the jurors[5] and prior to the exercise of any peremptory challenges, Mr. Porter and Mr. Patrono conferred and agreed that, perhaps, it would be better if Engle did not serve as a juror and asked the court, through a message to the court crier, to have Engle excused as a possible juror: word was relayed to counsel, through the court crier, that, if either counsel desired, a peremptory challenge could be exercised and that the court did not deem it advisable to excuse Engle for cause.

---

[4] Actually both Messrs. Porter and Patrono represented the same insurance company: Mr. Patrono represented Engle as a defendant and Mr. Porter represented Engle as a counterclaimant as well as Engle's son.

[5] Apparently, under the practice in Washington County, voir dire of jurors is conducted by the court crier and the trial judge. On the voir dire of the court crier, Engle stated he knew both Messrs. Porter and Patrono. On the voir dire of the court, *the court did not inquire of Engle whether Messrs. Porter and Patrono, or either of them, had ever represented him.*

About a week after the trial had commenced and three days before rendition of the jury verdict, at a conference of counsel and the trial judge, the latter was *directly* informed that both Mr. Porter and Mr. Patrono represented Engle in the lawsuit pending on the current trial list. On being so informed, the court then stated that, had he known that fact, he would have excused Engle for cause, but that he "knows Mr. Engle and knows he would follow the instructions of the Court . . .". A suggestion then made that Engle be excused and the trial proceed with eleven jurors was rejected by Dr. Riggle's counsel.

The record clearly shows knowledge of Mr. Patrono's representation of Engle by Mr. Porter, and vice versa: that, during the trial, the court was *directly* informed of the fact and did nothing about it: that there is not a scintilla of evidence that such fact had anything to do with the verdict rendered. This reason assigned by the court in its award of a new trial is completely without merit.

Not only was the award of a new trial for the assigned two reasons capricious and arbitrary but the *manner* in which the new trial was granted was highly improper. A court may, sua sponte, award a new trial: *Stephenson v. Service Supply Corp.,* 164 Pa. Superior Ct. 31, 63 A. 2d 438; *Jedwabny v. Philadelphia Trans. Co.,* 390 Pa. 231, 135 A. 2d 252; *Fisher v. Dye,* 386 Pa. 141, 125 A. 2d 472; *Commonwealth v. Fox,* 181 Pa. Superior Ct. 292, 124 A. 2d 628. Such a rule, however, does not sanction the award of a new trial in the manner in which the court below acted in the case at bar.

Within hours of the rendition of the verdict, the court interrogated four jurors *without notice to counsel*: the court then interrogated the juror Engle, with a stenographer present but again *without notice to counsel*: then, without any knowledge on counsels' part

and *without any motion for a new trial,* the court granted a new trial *solely* on the conduct of the jurors. Such practice cannot be countenanced: it constitutes a basic misconception of the role a judge occupies in our judicial system. The language in *Albert J. Hoppe, Inc. v. St. Louis Public Service Co.,* 361 Mo. 402, 406, 235 S.W. 2d 347, is appropriate: "The question instantly before us goes deeply into the underlying principles of due process. In our system of jurisprudence reasonable notice to a litigant (when there exists even the possibility of action adverse to his interests) is deemed to be of the essence of fairness and justice. Reasonable notice to parties whose interests are at stake in a contemplated order is a prerequisite to the lawful exercise of the court's power. Opportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights is the very foundation stone of our procedure. The requirement of notice can result in no hardship. Nor is it restrictive of the trial court's freedom of action in the exercise of its judicial discretion."

After the award of the new trial (December 1, 1961), an appeal was taken to this Court (December 5, 1961). Counsel for Dr. Riggle filed and served (December 16, 1961) a statement of the question to be raised on appeal, under Rule 22 of this Court, and of the evidence he did not intend to print, under Rule 40 of this Court. The question raised was whether the court below abused its discretion in awarding a new trial *"for the reasons set forth in its order of December 1, 1961."** Miss Wolfe's counsel desired that other evidence[6] be printed and, for that purpose, went before Judge Weiner. On December 18, 1961, Judge Weiner

---

\* Emphasis supplied.

6 The voir dire examination of several jurors beside Engle and a record of a conference between counsel and the court on December 12, 1961.

directed the enlargement of the printed record by such other evidence. Therefore, it is clear that on that date Judge WEINER knew the question raised on appeal and that the record to be presented to this Court would consist *only* of evidence relating to the conduct of the jurors.

Six weeks after the award of a new trial, the trial judge filed an opinion entitled "Opinion of Trial Judge in Support of Order Granting a New Trial".[7] In that opinion the trial judge states that he "had already been of the opinion that the verdict returned in favor of [Dr. Riggle] was so contrary to the evidence as to shock his sense of justice". The trial judge then proceeded to assign this as an additional reason to bolster the award of a new trial, even though no opportunity was afforded to Dr. Riggle's counsel to be heard in the matter and even though the award of a new trial was specifically based on the jurors' conduct.

In *Clewell v. Plummer*, 388 Pa. 592, 598, this Court, speaking through Justice (now Chief Justice) BELL, quoted with approval from *Coward v. Ruckert*, 381 Pa. 388, 393, 113 A. 2d 287: " 'One of the least assailable grounds for the exercise of such power [to grant a new trial] is the trial court's conclusion that the verdict was against the weight of the evidence and that the interests of justice therefore require that a new trial be awarded; especially in such a case is an appellate court reluctant to interfere' ". The essential soundness of that rule is beyond question. However, the posture of the instant record completely relieves us of any reluctance to interfere in the case at bar.

---

[7] Five days prior to this opinion, President Judge CARSON filed an opinion concurring in the order of December 1, 1961. His concurrence is on *two* grounds: that Engle concealed from the court his relationship to Mr. Patrono and the fact he knew Dr. Riggles. In this concurrence it is significant the grant of a new trial is not based on the ground that the verdict is against the weight of the evidence.

On the present record there is nothing before us upon which we can determine whether the court below abused its discretion in deciding the verdict was against the weight of the evidence. There is nothing on this record concerning the negligence or lack of negligence and the fault for the absence of such evidence lies not with counsel for either party.

This appeal was taken from an order based on two, and only two, grounds. It was the grant of a new trial *on those grounds* which was challenged and the *only* evidence necessary to be printed was such as bore a relationship to those grounds. The court below, as well as counsel, was aware of that.

The opinion of January 17, 1962, is obviously a belated attempt to justify an award of a new trial untenable both in law and in the manner in which it was made. The case at bar does not present a situation portunity to be heard, belatedly assigns a new and ad-where the award of a new trial was based on a wrong ground whereas a proper ground existed. On the contrary, this is a situation where the reasons assigned for the award of a new trial are entirely without merit and the court below, without giving the parties an op-ditional reason the propriety of which cannot be determined on this diminuted record.

The grant ex parte of a new trial and the belated attempt to support such grant by a new and additional reason, after the grant of the new trial and the appeal therefrom, have deprived Dr. Riggle of the due process to which he is clearly entitled.

In reversing the order granting a new trial, we must do so in such manner as to preserve Miss Wolfe's rights. Were we to enter judgment on this verdict Miss Wolfe would be deprived of her right to file a motion for a new trial because the verdict was against the weight of the evidence or for some other valid reason. To Miss Wolfe must be given the right to file a motion for

a new trial,[8] and, if such motion be filed, both parties must be given an opportunity to a fair and impartial hearing on such motion. To that end, upon the return of the record to the court below, the right should be granted nunc pro tunc to Miss Wolfe to file a motion for a new trial within four days of the receipt of the record in the court below.

Order reversed. The record is remanded to the court below and the court below directed to proceed in a manner consistent with this opinion.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Mary Emma Wolfe, the plaintiff in this case, brought an action in trespass against Dr. Paul P. Riggle, alleging negligence in the performance of a surgical operation. The jury returned a verdict in favor of the defendant. After the trial it was ascertained that one of the jurors, William C. Engle, was a friend of the defendant, Dr. Riggle, and that he, Dr. Riggle, was one of Engle's customers in his motorboat business.

It was also learned that Engle, the juror, was himself a defendant in a case which was to come up during the same term of court and his case would be decided by the very jurors with whom he would associate and fraternize during the term of the court.

With this revelation it should be obvious that Engle's participation in the present trial vitiated the entire trial and rendered it utterly void. Leaving aside the fact that Dr. Riggle was a client of the involved

---

[8] Whether the time for filing a motion for a new trial can be extended, see: *Lance v. Bonnell*, 105 Pa. 46; *Fisher v. Hestonville, Mantua & Fairmount Passenger Railway Company*, 185 Pa. 602, 40 A. 97. *Philadelphia Sub. Transportation Co. v. DiFrancesco*, 362 Pa. 326, 66 A. 2d 254, is clearly distinguishable from the instant factual situation.

juror, how could that juror be impartial when he knew that he himself was to be a litigant in the same court, during the same term, and before the same jurors who were his present colleagues? It would be contrary to human nature to assume that throughout the Wolfe trial Engle at any time forgot that he was a litigant. His participation in the trial was not that of an impartial judge, but that of the partisan. His partisanship destroyed the neutrality of the jury box, his personal interest wrecked the scales of justice supposedly always in balance.

Justice is portrayed blindfolded because it is assumed that the judge or juror will look at nothing which may induce him to decide one way or the other because of personal gain, favor, or advantage. But the juror in this case stripped off his blindfold to see that the defendant in the case he was trying was his customer and to look also at the trial list which told him that he was soon to be a party litigant and possibly it would be to his interests to curry favor with his fellow-jurors who were later to be the jurors of his cause.

With this appalling disclosure before this present Court, how can the Majority decide that the trial was proper and fair and that the plaintiff, Mary Emma Wolfe, was accorded due process of law? A juror should be as impartial as sunlight, as unprejudiced as the falling snow, and as unbiased as the angel of truth. Engle was not such.

I do not say that he was dishonest, but I do assert that his personal interests were such that he could have been swayed, consciously or unconsciously, toward Dr. Riggle's side of the case because of his own private interests in the court's business. A juror has no right to be involved in litigation which is to be resolved by his fellow-jurors. This kind of interest poisons the very fountain of justice, it contaminates the waters of fair play, it destroys the scalebeam which is

intended to hold both sides on an even level of consideration, it makes a mockery of the courts.

Only three years ago this Court had before it the case of *Com. ex rel. Fletcher v. Cavell*, 395 Pa. 134, where the defendant who was convicted of murder in the first degree, sought a writ of habeas corpus, charging that he had been denied a fair trial because the foreman of the jury which convicted him was a son-in-law of the detective who had conducted the investigation for the prosecution. This Court refused the writ. I wrote a Dissenting Opinion in which I said: "It seems like carrying coals to Newcastle or transporting spaghetti to Naples to say that a juror should never have a personal reason, apart from the evidence in the case, to desire a verdict for one side or the other . . . I am not saying that the son-in-law here, the foreman of the jury, was influenced by his marital relationship to the detective-prosecutor to the extent that he overlooked evidence favoring the defendant and emphasized the evidence supporting the prosecution. I am not saying that, but at the same time I am also *not* saying that he was not so influenced. And if there existed only the probability that he could have been so influenced, the defendant was unquestionably denied a fair trial."

After Fletcher had lost in this Court, he sought a writ of habeas corpus in the United States District Court which also refused him relief. He appealed to the United States Court of Appeals which reversed the district court and ordered a new trial, saying: "We rest our decision on the firm ground that Stephenson [the son-in-law juror] in declaring himself to be impartial and without prejudice, while not revealing that he was the son-in-law of the County Detective who was one of the investigative officers in the very matter to be tried, who was to be a material witness at the trial, and whose testimony Stephenson would believe, created

an intolerable situation that resulted in a fundamentally unfair trial to appellant." (*United States of America ex rel. James Fletcher v. A. Cavell*, 287 F. 2d 792.)

The Court of Appeals said further: "It could have been with this general thought in mind that Stephenson (as he also testified) prior to being selected as a juryman remarked, '. . . we didn't think that the defendant would accept me as a juror by being relation (stet) to him.' He said he was surprised at being left on the jury. He had also said while being examined on his voir dire that he was 'perfectly impartial'; was free of prejudice or bias; could render a verdict solely from the evidence adduced from the stand."

The fact that a juror feels he may be "perfectly impartial" is not determinative of the question as to whether he *can* be impartial, given his personal involvement in the trial. Moreover, it will be noted that Stephenson himself was surprised that he was left on the jury.

It will be noted in reading the Majority Opinion in the case at bar that a suggestion was made at the trial that Engle be excused from serving on the jury and that the trial proceed with eleven jurors, but the suggestion was rejected by the counsel for Dr. Riggle, *the ultimate verdict-winner in the trial.*

The Majority Opinion says that "there is not a scintilla of evidence that such fact [Engle's presence on the jury] had anything to do with the verdict rendered." Does the Majority suppose that Engle would say that he was influenced in his deliberations on the case by the fact that he sold to or was contemplating selling a motorboat to Dr. Riggle? Moreover, as I said in the *Fletcher* case, it is not what the juror actually did but the fact that there existed "the probability that he could have been so influenced" which denied the defendant a fair trial.

I agree with the Majority that the Trial Judge should have summoned the attorneys in the case before him prior to ordering a new trial, but whether he called them or not, the fact remains that the trial was not the kind envisaged in accordance with the traditions of Anglo-Saxon justice. The fact remains, which no one denies; that Miss Wolfe's case was decided not by twelve impartial jurors, but by eleven jurors and one person whose interests could well have made him an advocate not for even-handed justice but for a verdict in which he saw an advantage for himself. The fact remains that one of Miss Wolfe's jurors was a litigant in another case which would eventually be passed upon by some of these same companions now in the jury box with him and later to be in the sanctity of the jury box on a case, in which he would be a defendant. How can the Majority evaluate such a situation as being consonant with the jury trial guaranteed by the Constitution?

Engle's presence in the jury room where the jurors were considering Miss Wolfe's case was as improper as if he were a total stranger. This Court decided, as recently as November 14, 1961 that a judge may not go into the jury room to give a juror a glass of water.* How can it now justify its present decision which allows in the jury room a person passing around drinking water drawn from the well of his own private interests?

. One of the reasons justifiably advanced in support of the thesis that the famed Sacco-Vanzetti trial was not a fair trial is that a man summoned as a juror and who fraternized with the veniremen who later became jurors in the case, took the stand as a witness against Sacco and the District Attorney asked the jury to accept this witness with greater confidence because they had something "in common with him"!

---

* *Glendenning v. Sprowls*, 405 Pa. 222.

. The situation in this case is not much different, even though it is not a criminal case.

The Majority is offering Miss Wolfe the opportunity to file a motion for a new trial on the basis that she may argue that the verdict was against the weight of the evidence or for some other reason, apart from the improper conduct of juror Engle. This does not accord to her justice. She is entitled to a new trial because she did not get that kind of an impartial trial by that kind of a jury guaranteed under the concept of jury trial as recognized by our Constitution and the law of the land.