## Donofrio v. DeFazio

Before McKenna, Aldisert and Alpern, JJ.

*Homer W. King*, for plaintiffs.

*H. Fred Mercer*, for defendants.

McKENNA, J., June 20, 1962.—We are asked by plaintiffs to grant a new trial in this case following a verdict for defendants. Plaintiffs base their request on three grounds: First, that they were deprived of a chal-

lenge to one juror prior to the selection of the 12; second, that the jury was improperly polled immediately after it had announced the verdict, and third, that the verdict is against the evidence.

The suit arises from an accident in which plaintiff, Albert Donofrio, a pedestrian, was struck and injured by an automobile being operated at the time by Beverly Ann DeFazio, one of the defendants. This occurred on Sunday, November 30, 1958, at about noon on Saw Mill Run Boulevard near its intersection with Maytide Street in the City of Pittsburgh.

Saw Mill Run Boulevard runs in a southerly direction from the City of Pittsburgh. It is four lanes wide, accommodating two moving vehicles on each side. Overbrook Street runs into Saw Mill Run Boulevard from the north as does Maytide which is 125 feet south of Overbrook. These streets are located several miles to the south of the business section of the city. There are a number of traffic lights at each intersection. A station wagon being operated by an unidentified driver was proceeding in a southerly direction along Saw Mill Run Boulevard. As it passed the intersection of Maytide it pulled over to the left hand or fast lane of traffic and stopped. The driver hailed the plaintiff, Albert Donofrio, who was then standing at the southeasterly corner of Maytide and Saw Mill waiting for an opportunity to cross the Boulevard. The driver of the station wagon asked plaintiff certain directions. Donofrio approached the car, answered the inquiry, and directed the driver of the station wagon to pull to the right or slow lane of Saw Mill Boulevard and park. Before the driver of the vehicle had an opportunity to do this, plaintiff crossed in front of the station wagon and was struck by the 1957 Chevrolet then being operated by Beverly Ann DeFazio, one of the defendants. This vehicle was traveling in a southerly direction on Saw Mill Run Boulevard.

Mrs. DeFazio testified that she saw the station wagon parked in the left lane. She proceeded to pass it on the right at a speed of about 15 miles per hour. Just as she passed the front of the station wagon the collision with plaintiff occurred. Plaintiff was thrown forward. Mrs. DeFazio stopped her vehicle almost immediately.

Under the circumstances the verdict is supported by the evidence. The jury could well have found that Mrs. DeFazio was not negligent in the operation of the auto, which she was driving, that plaintiff was guilty of negligence as he stepped into the path of traffic from a position in front of a stopped vehicle, and that plaintiff's own negligence was the sole cause of his injuries.

Mr. Donofrio suffered a fractured leg and was hospitalized from November 30 to December 4, 1958. His hospital bill amounted to $129.75 and his doctor bill, which was paid to Dr. John L. Happel, was $175.

It is apparent from this recitation of the facts that Lucy Donofrio could not recover from defendants even if her husband had been awarded a verdict. In Neuberg v. Bobowicz, 401 Pa. 146 (1960), it is held that a married woman does not have a cause of action in Pennsylvania for the loss of her husband's consortium. Accordingly, the name of Lucy Donofrio was deleted by consent as a party plaintiff.

Two of the three reasons relied on by plaintiff for a new trial relate to matters which did not occur at the hearing. First, plaintiff asserts that he was deprived of a challenge to a juror, and that instead of four challenges to which he was entitled he was allowed only three. At the "voir dire" it developed that one of the 20 jurors selected had worked for an insurance company and knew both counsel for plaintiff and counsel for defendants. Plaintiff now asserts that because of this, the particular juror should have been excused and a new juror substituted in his place. In effect, he as-

serts that he had the right to challenge the juror for cause. The judge then presiding in the assignment room denied plaintiff's motion to this effect. There was no error in this action. An employe of an insurance company is not automatically disqualified from serving on a jury in a personal injury case. The action of the presiding judge concluded this question and we will not examine it further.

The jury retired to commence its deliberation at 3 p.m. on February 17, 1962, the second day of the trial, and did not return until 9 p.m. on the same day. Counsel for plaintiff waited with the trial judge to see what the verdict would be. At about 8:30 p.m., the trial judge sent word to the jury asking it to return to the court room for further instructions, if necessary, or for discharge if it appeared that the jury was hopelessly dead-locked. Instead of complying with the suggestion on the part of the judge, the jury sent word to him that it had just about reached a verdict. The court then withdrew his request. About 30 minutes after this, the jury returned with a verdict for the defendants. Counsel for plaintiff asked that the jury be polled. The court instructed the clerk to poll the jury. The clerk did this in the time-honored manner by asking each individual juror if the verdict returned was actually his verdict. Each juror replied in the affirmative. We find nothing unusual in this occurrence. The jury evidently had some difficulty in arriving at the verdict, but we are satisfied that it represents the unanimous will of the 12 jurors who heard the case.

Plaintiffs assert that the verdict is against the weight of the evidence. As we have indicated, we believe that the jury's finding is amply supported by the record. The testimony of the witnesses for the plaintiff varies little from that of defendants. Mr. Donofrio testified that after the conversation with the operator of the station wagon he went to the front of it, looked to his

right along Saw Mill and saw nothing. He proceeded into the slow lane and looked again. At this moment, he said, the DeFazio auto, having been directly behind the station wagon, suddenly pulled around it to the right, and struck plaintiff. This witness also said that he had preceded his son across Saw Mill. Witnesses for defendants said that the son had first run across the roadway. The jury was at liberty to base its findings on the testimony of witnesses for defendants. This indicated that they were not responsible for the unfortunate accident.

### Order

And now, June 20, 1962, the motion for a new trial is refused and it is ordered that judgment be entered upon payment of verdict fee.

### Concurring Opinion

ALDISERT, J. — A provocative point is revealed in these proceedings: may an employe of a casualty insurance company be challenged for cause from serving on a jury by plaintiff's counsel?

With only a scanty record relating to this phase before the court, the trial judge and his associates on the court en banc have no alternative other than to deny the motion for new trial.

Had certain testimony been developed and recorded on this particular during the voir dire proceedings, however, and had the attention of the trial judge been directed to this objection prior to trial, then conceivably I would have held otherwise.

The basic qualification of a juror is the willingness and the ability to be fair and impartial during the proceeding.

"A juror should be as impartial as sunlight, as unprejudiced as the falling snow, and as unbiased as the angel of truth. . . .

"The fact that a juror feels he may be 'perfectly impartial' is not determinative of the question as to

whether he *can* be impartial, given his personal involvement in the trial. . . .": Mr. Justice Musmanno in his dissenting opinion, Wolfe v. Riggle, 407 Pa. 172, at 183 (1962).

All casualty insurance company representatives should not be excluded from jury duty in personal injury actions. Those representatives in the sales, accounting, underwriting, administrative, personnel and promotion departments, though daily exposed to the concepts of liability insurance, nevertheless are not, by virtue of their occupation, rendered emotionally or intellectually incapable of objective venireman service.

When it comes to employes of claims departments, however, I am not certain that the raiment of jury eligibility appears so bright and capable of discernment.

Claims department employes whose functions are merely administrative, such as typists, file clerks, and investigators, may conceivably be qualified. Can we say, however, that one who *adjusts claims* for liability insurance companies, as distinguished from those who merely *investigate claims*, is capable of objective judgment in a personal injuries trial? I don't think so. I do not believe he qualifies under accepted concepts of jurisprudence:

Dryden: "Justice is blind, he knows nobody".

Addison: "Justice discards party, friendship, kindred, and is therefore represented as blind".

The environment of a claims adjusting department of a casualty company is a pole apart from the atmosphere of an impartial judicial tribunal. Its climate of evaluation is as controlled as the conference room of a law firm whose practice is limited to representing plaintiffs in personal injury actions.

The claims adjuster owes no allegiance to any court. He takes no oath to conduct himself with objectivity

and impartiality. His oath of loyalty is to one master: his employer, the liability company. The polestar of his occupational obligation beckons him—unwaveringly, unfalteringly, unswervingly—in one direction: to adjust and settle claims at the minimum of cost to his company. His sole duty is to arrange for the adjustment of a claim against his assured at the lowest possible cost to his company. This is his psychological, intellectual and emotional orientation throughout the daily pursuit of his trade.

And his is a trade. It is not a profession. There are no traditions of justice, fair play, or equity associated with his training or with the objectives of his daily pursuit. It is a business, a highly competitive one, involving a constant struggle to strike a balance among the unpredictables of underwriting, reserves, and claim payments.

The foregoing description, of course, applies only to those claims adjusters who are laymen. I have completely excluded from this discussion lawyers who are employed as claims adjusters for the obvious reason that lawyers are excluded by statute from jury service. The problem of their serving on juries never arises.

The ability of a professional man to adjust from partisan advocating to non-partisan judging, stems from the very existence of the professional environment. A lawyer is first, foremost, and always, an officer of the court. His entire relationship with clients is continually tempered by this overriding obligation.

We have witnessed Samuel Leibowitz, hero of the best seller "Courtroom", one of the nation's outstanding defenders in criminal court, converted into a dedicated New York jurist, protecting the "People of New York" with the same vigilance he once extended to his clients on the other side of the table. Lawyers who have constantly represented defendants in personal injury actions have become models of impartial jurisprudence

once they have donned the robes, as have lawyers whose practice was predominantly plaintiff representation.

What delineates the difference between the lay claims adjuster and the lawyer is essentially the foregoing difference between a trade and a profession. The professional effects the transition because he is just that, a professional. I cannot agree that a layman, exposed to an intensely partisan activity through the years, can be expected to perform an intellectual and emotional metamorphosis for a temporary two week period while on jury duty.

Accordingly, had testimony been developed and properly made part of the record that the employe of the casualty insurance company was a claim adjuster, I would have permitted plaintiff's counsel a challenge for cause. Likewise, I would permit defendant's counsel a challenge for cause whenever there is summoned for jury duty in a negligence case any employe—secretarial, administrative, or investigative— of any lawyer or law firm whose practice essentially entails the representation of plaintiffs in personal injuries cases.