## Sandrock v. Vaughan

*Michael Halliday*, for plaintiff.

*W. Allen Dill*, for defendant.

ACKER, J., December 2, 1969.—Plaintiff has petitioned requesting permission to interview jurors and present their testimony as a basis for a new trial. The issue is whether plaintiff shall be granted that prayer.

This case arose from an automobile collision when defendant's automobile slid over the center line of a highway striking defendant's vehicle, resulting in personal injuries and property damage. The specials were claimed to be $2,800, but the verdict was $300 less, at $2,500. In the trial immediately prior to that of this case where similar injuries were claimed, the verdict was $17,000. Plaintiff's attorney claims that after the return of his verdict, while speaking to a fellow member of the bar not interested in either case, he was informed that the jury panel knew that the demand and offer in the previous case were both substantially less than the verdict rendered. Therefore, he reasons the jury took these "facts" into consideration and rendered a substantially less verdict than even the special damages.

Although a verdict must not be permitted to stand if the jury did, in fact, consider matters not properly before them, it must be such as to affect the impartiality or disqualify them from exercising the powers of reason and judgment.[1]

But it is only in a clear case of improper conduct proven by competent testimony that a verdict, fully supported by the evidence as in this case, should be set aside.[2]

---

[1] Goodright v. McCausland, 1 Yeates 371, 1 Am. Dec. 306 (betting on outcome of suit before drawn for that jury); Friedman v. Ralph Brothers, Inc., 314 Pa. 247, 171 Atl. 900 (1934), where juror visited scene and took measurements.

[2] Friedman v. Ralph Brothers, Inc., supra.

Assuming that the hearsay testimony of the fellow attorney was unqualifiedly correct, it does not necessarily follow that it in any way caused this jury to render a lower verdict. Rather, as contended by defendant, logic might point to a higher verdict as, in fact, resulted in the previous case.

A more serious aspect of the issue, however, is the thought of interviewing and bringing to court discharged jurors in an effort to impeach their verdict.

In Wolfe v. Riggle, 407 Pa. 172, 180 A. 2d 220 (1962), at p. 174, the court reaffirmed the long-established rule, " '. . . we cannot accept the statement of jurors as to what transpired in the jury room as to the propriety or impropriety of a juror's conduct . . . To do so would destroy the security of all verdicts and go far toward weakening the efficacy of trial by jury . . . *Jurors cannot impeach their own verdict.*"

Wherefore, in this case, certainly jurors should not be interviewed upon the mere suspicion that information may have been received by them about a previous case which may or may not have affected their decision making in this case. The prayer is denied.

### ORDER

And now, December 2, 1969, the prayer of plaintiff's petition is denied.