## Commonwealth *v.* Johnson, Appellant.

Argued April 12, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John A. Eichman, 3rd,* with him *S. Eugene Kuen, Jr.,* for appellant.

*Colbert C. McClain,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 24, 1948:

This is an appeal from a conviction of voluntary manslaughter. Defendant Lee Ivory Johnson, alias Ivory Johnson, was indicted for the murder of Spencer L. Jackson, a fellow inmate at the Eastern State Peniten-

tiary. Jackson died from a stab wound of the heart inflicted by defendant between 8:10 and 8:15 a. m., September 24, 1947. Defendant and Jackson had been cell mates until about one week prior to the killing when they had been assigned separate cells by the authorities at defendant's request.

In his signed statement, defendant confessed that on the morning of the crime, as he started down to the Officer's Mess to work, Spencer Jackson said he wanted to talk to him. He told defendant to keep away from him "or they were going to give it to me [defendant]". Defendant went to Guard O'Brien, who was standing at the end of the block where defendant and Jackson met, and told him that "Spencer had something to tell him". He said the deceased then spit in his face and a fight ensued. Officer O'Brien tried to break up the fight, ran outdoors into the cell yard and called for assistance. Defendant said he heard "someone holler back that Big Day [another inmate] was coming". He saw an opened penknife laying in the corner, picked it up and stuck Spencer Jackson with it. Guard O'Brien testified that he saw the defendant pull the knife from his pocket and that Big Day was not in the corridor. Defendant denied having a knife but testified that other inmates had been carrying knives concealed on their persons. Defendant's criminal record and prison record were both bad.

Defendant was indicted and tried for murder. When the verdict of the jury was being taken, the crier asked: "Do you find Lee Ivory Johnson, alias Ivory Johnson, charged with murder, guilty or not guilty." The foreman replied: "Not guilty." From this point the record reads as follows (until the proceedings on the following morning, hereinafter referred to) : "The Crier: Members of the jury, harken unto your verdict as the Court hath recorded it. You say you find the defendant at the bar of the court, Lee Ivory Johnson, alias Ivory Johnson, not guilty, and so say you all." The Court: "I am satisfied, in my own opinion, that the jury made a mistake,

but, after all, it is their verdict, and we abide by it and find no fault with it."

On the following morning, January 16, 1948, these proceedings took place. The Assistant District Attorney said to the court that "intimation has been given to the District Attorney by several members of this jury that tried the case of the Commonwealth v. Lee Ivory Johnson, charged with the death of Spencer Jackson, that yesterday they rendered, not their full verdict, but an incomplete verdict . . . that the Jury were unanimous in their complete verdict, and they desire to offer their full verdict to the Court". He then moved that the jury be polled and the jurors be requested to give their full verdict. Defense counsel objected. The objection was overruled. The court then said to the jury: "It has been brought to my attention . . . that your verdict as given yesterday—Not Guilty to the indictment for murder, was not fully expressed. . . . What was your real and complete verdict in this case?" The foreman answered: "It was guilty of voluntary manslaughter, but not of first degree murder." The foreman further stated that the verdict was unanimous. The court then directed the polling of the jurors. All those who had been on the jury were then polled and they each answered that the defendant was "guilty of voluntary manslaughter". Defendant's counsel later in the colloquy said: "I would like to get on the record—the Jury was dismissed and left the Court room [yesterday]." The court: "I will agree that the Jury had been dismissed and most of them had left the Court room, when some appeared and stated they could not go home because they were worried sick about the verdict because it was not the correct verdict, not the complete verdict; . . . but most of them had gone. I will agree to that." Defendant's counsel then said: "There is another thing—the verdict of not guilty had been recorded." The Court: "Right; that is a legal proposition." Defendant's counsel stated: "When these jurors came to you then you summoned the defendant's Counsel,

the defendant and the jurors back to the box this morning." The Court: "After the trial was ended to all intents and purposes." Defendant's counsel: "They returned this morning." The Court: "That is a legal proposition; you are right about that. . . ." The court then imposed the following sentence: "I sentence you, Lee Ivory Johnson, to a term of not less than six years to not more than twelve years in the Eastern State Penitentiary, for voluntary manslaughter, commencing at the expiration of your present term." To all these proceedings the defendant excepted and the Court said: "You may take an appeal."

The established rule is that the verdict as recorded is the verdict of the jury and the latter shall not be permitted to impeach or to alter or amend it after their separation or discharge. See *Com. v. Breyessee*, 160 Pa. 451, 28 A. 824; *Rottmund v. Penna. R. R. Co.*, 225 Pa. 410, 74 A. 341. This Court unanimously held in an opinion by Justice ROGERS [1] in *Walters v. Junkins*, 16 S. & R. 414, that: "After the jury have rendered their verdict, it is read to them, that they may say, whether the court have recorded it according to their finding. If any mistake should have occurred, it may be immediately corrected. To permit an alteration, after the jury are dismissed, would lead to great abuses, and I am unwilling to extend the principle further than the adjudged cases."

In *Eastley v. Glenn*, 313 Pa. 130, 169 A. 433, this Court quoted with approval the following from *Scott v. Scott*, 110 Pa. 387, 390, 2 A. 531: " 'After the verdict recorded the jury cannot vary from it, but before it be recorded they may vary from the first offer of their verdict, and that verdict which is recorded shall stand; . . .' " In some instances the jury may be reassembled to correct or amend their verdict when the defect is merely one of form, or is apparent on its face, or is of such nature that

---

[1] Chief Justice TILGHMAN and Justice GIBSON were also members of the Court at that time.

the court itself could have corrected it without the aid of the jury.

In *Yonker v. Grimm*, 101 W. Va. 711, 133 S. E. 695, it was held that " 'The power of a jury over their verdict, unlike that of the court, ceases on their discharge. With their assent to the verdict as recorded, their functions with respect to the case cease and the trial is closed, and after the verdict is received and the jury discharged the control of the jury is at an end and they cannot be recalled to alter or amend it.' " This is in harmony with the holding of the Virginia Supreme Court in *Melton v. Commonwealth*, 132 Va. 703, 111 S. E. 291, where it was held that when the court announces the jury's discharge, and they leave the presence of the court, their functions as jurors have ended, and neither with nor without the consent of the court can they amend or alter their verdict.

Where a verdict of guilty was returned and recorded in a murder trial, but the jury failed to specify the degree of murder, it was held in *People v. Lee Yune Chong*, 94 Cal. 379, 29 Pac. 776, that they could not be reassembled after their discharge and dispersal, to amend the verdict by making it read "Guilty of murder in the first degree" where they had departed from the court room and had talked with other persons about the case.

What the Supreme Court of Mississippi said in *Prussel v. Knowles*, 4 How. 90, applies to the instant case: "The rule is well settled, that a juror shall not impeach his verdict, and has been fully recognized in this court. If, in ordinary cases, the verdict is contrary to evidence or the law, a new trial may be granted. But this should appear from the evidence given on the trial, and not by discoveries made by exploring the recesses of the jury room. Such a practice could not be tolerated without inviting the losing party in all cases to tamper with the jury, and few verdicts could stand. Courts of justice have, therefore, adopted the rule that a juror shall not be permitted to repudiate his own conduct, or to invalidate his verdict."

"It is too late to make a request for the poll of the jury after the verdict has been received and recorded, or where the jury have dispersed after handing the verdict to the clerk, or after the jury have been discharged": 64 C. J. 1060, section 863. This is the rule enunciated by this Court in *Rottmund v. Penna. R. R. Co.,* supra, where we said: "The motion [for a poll of the jury] cannot be made after the verdict has been announced in court, affirmed by the jury collectively, and recorded on the minutes: Commonwealth v. Schmous, 162 Pa. 326; Scott v. Scott, 110 Pa. 387; Malone v. State, 49 Ga. 210; 22 Ency. of Pl. & Pr. 935." It may not now be contended that the jury through ignorance or inadvertence failed to express its actual intention.

The District Attorney states: "Perhaps he [the Assistant District Attorney] should have promptly moved for a poll of the Jury, which would have elicited the full and complete verdict, but along with everybody else, except the jury themselves, he *assumed* that this was the full, complete and unanimous verdict upon the murder bill."

It is not unusual for lawyers and others to suffer disappointments because of erroneous assumptions or because of failure to think quickly and act promptly. "Nine-tenths of wisdom consists in being wise in time."

The jury in this case had ample opportunity prior to their dispersion to correct any error in their announced verdict. They heard the verdict censured by the trial judge without any one of them indicating that the verdict so announced was not the verdict agreed upon. The Assistant District Attorney likewise remained mute and passive. After the verdict was announced and recorded and the jury discharged from further consideration of this case, the Commonwealth's opportunity to bring to light the hidden verdict was gone forever. The judge's act in later reassembling those who had constituted the jury was in law a nullity. The twelve persons thus assembled had no more legal right

to alter the recorded verdict which they as jurors had rendered on the preceding day than would a man who retired from the presidency of the United States at the end of his term have, on the day after his retirement, to alter the text of an official document which he as President had executed on his last day in office.

When the verdict of "Not Guilty" was announced and recorded in this case, the prisoner if he was not being held on another charge, would have been entitled to immediate release from custody. Any prisoner thus acquitted and not held on another charge who was not given his liberty, could successfully apply to any court, Federal or State, for a writ of habeas corpus for he had "immediate cause to be delivered". Both the Federal and State Constitutions protect individuals from being deprived of life, liberty, and property without due process of law. To deprive a man of his liberty because of a certain criminal charge made against him, *after he had been formally acquitted of that charge by a jury* would be a violation of his constitutional rights. The "verdict" rendered on January 16, 1948 by the former members of the jury which had tried this defendant and had acquitted him was rendered by a body that was functus officio, and since as a body it was legally defunct, its action as a body was of no legal effect.

Not only are reason and authority against the position taken by the Commonwealth in this case, but a consideration of the evil consequences which would follow permitting a jury to reassemble and alter its verdict on the ground of mistake, should in itself deter courts from sanctioning such practice. If this practice were judicially sanctioned, a jury might acquit a defendant of a crime and then a day, a week or a month later reassemble and declare that the verdict was a mistake, that they intended to find the defendant guilty and would then proceed to do so. To permit such a disorderly practice in the administration of justice is unthinkable. It is the antithesis of due process of law.

The importance of strictly adhering to long established procedures in the trial of criminal cases is set forth by Chief Justice GIBSON in *Peiffer v. The Commonwealth*, 15 Pa. 468, where this Court reversed a judgment of conviction of murder in the first degree because the jury, after being empanelled and sworn, were, with the consent of the prisoner's counsel, allowed to separate. Chief Justice GIBSON said: "Even the forms and usages of the law conduce to justice; but the common law, which forbids the separation of a jury in a capital case before they have been discharged of the prisoner, touches not matter of form, but matter of substance. It is not too much to say that if it were abolished, few influential culprits would be convicted, and that few friendless ones, pursued by powerful prosecutors, would escape conviction. Jurors are as open to prejudice from persuasion as other men, and neither convenience nor economy ought to be consulted, in order to guard them against it. Let them have every comfort compatible with their duties; but let them not be exposed to the converse of those who might pervert their judgment."

The judgment of the court below is reversed and the sentence imposed on that judgment is vacated.

Mr. Justice PATTERSON dissents.