**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 15 EAP 2023 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on |
| | : | September 27, 2022 at No. 424 |
| v. | : | EDA 2021 affirming the Order |
| | : | entered on January 27, 2021 in the |
| | : | Court of Common Pleas, |
| LEONARD CHAMBERS, | : | Philadelphia County, Criminal |
| | : | Division at No. CP-51-CR-0009387- |
| Appellant | : | 2019. |
| | : | |
| | | SUBMITTED: October 31, 2023 |

**OPINION**

**JUSTICE WECHT**                                    **DECIDED: February 21, 2024**

In 2019, the Commonwealth charged Leonard Chambers with six crimes related to his deliberate failure to perform contractually-obligated home improvement services. At the conclusion of a stipulated non-jury trial on those charges, the trial court announced its verdict: Chambers was guilty of *two* of the offenses and not guilty of the *four* others. However, at sentencing, the court ordered Chambers to serve *three* concurrent jail terms. Then, in its written sentencing order, the court imposed concurrent jail sentences on *four* offenses. Chambers argues in this appeal that the trial court lacked the authority to modify its original verdict after the fact. The Commonwealth agrees.[1] So do we. Thus, we

---

[1] *See* Commonwealth's Br. at 7. The Commonwealth concedes that binding precedents and certain provisions in the Pennsylvania Rules of Criminal Procedure preclude the trial court from altering its original verdict. *Id.* at 7-13. The Commonwealth disputes any suggestion that the trial court's *post-hoc* modification of the verdict implicated Chambers' double jeopardy rights. *Id.* at 7.

vacate Chambers' judgment of sentence, and we remand for resentencing only on the two crimes for which he was convicted.

Laselle Thompson owns multiple properties in Philadelphia. In the spring of 2019, she needed a contractor to install tile in a bathroom at one of the properties, and to replace the carpet in three rooms and in a hallway at another property. One day, while Thompson was shopping for carpet, she ran into Chambers' cousin, John,[2] who recommended that she hire Chambers to do the work. John assured Thompson that Chambers, who was part of a religious organization, was a trustworthy contractor. Thompson agreed, and gave John her phone number.

Shortly thereafter, Chambers called Thompson and held himself out to be an honest home improvement contractor. Thompson agreed to meet with him. On April 6, 2019, Chambers went to the residence that needed new carpeting, showed Thompson some carpet samples, and measured the areas to be recarpeted. Chambers handed Thompson a business card, which indicated that he was the owner of the "Perfect Home Improvement Company," an organization that the card described as a "Religious Organized Church Oriented Construction Co.," and as a "Bonafied [*sic*] Charity."[3] The card listed a federal EIN, and Chambers provided Thompson with a New Jersey business address, both of which turned out to be fictitious.

Chambers impressed upon Thompson that, as a pastor, he was committed to spiritual and charitable practices. He assured her that, as a religious man, he sought only to provide competent work at a fair price, and that he was not in the contracting business to rip people off. Relying upon these assertions, Thompson came to trust Chambers, and hired him. Chambers indicated that he would be able to do the work within the next two

---

[2]     John's last name does not appear in the certified record.

[3]     Trial Ct. Op. ("T.C.O."), 6/25/2021, at 2.

or three days. Chambers drafted two contracts, one for the tile work and one for the carpet installation. Neither of the contracts indicated when the work would be started or completed. Thompson signed both contracts and provided Chambers with down payments on each. Thompson gave Chambers a check in the amount of $175 for the tile job and one for $800 for the carpet job. Chambers cashed the checks, but never returned to do the work.

In the weeks that followed, through a series of text messages, phone calls, and emails, Thompson pleaded with Chambers to provide her with an installation date for the tile and carpet. Chambers repeatedly deflected her inquiries. In an April 19, 2019 text message, Thompson told Chambers that she felt that she was being taken advantage of, and she asked him to return her deposits. She also called him repeatedly. Initially, Chambers did not answer or return the calls. However, the two spoke over the phone on May 7, 2019. During that call, Chambers assured Thompson that she would not have to wait any longer, and that the carpet would be delivered and installed on Wednesday, May 8, 2019. That day came and went, and neither the carpet nor Chambers appeared. At the end of that month, Chambers made the same assurances, and again failed to appear or to deliver the materials.

By June 7, 2019, it had become clear to Thompson that Chambers had no intention of fulfilling the contract or returning her money. Not only had he not begun the work, but he had also not even ordered the materials for the job. On that date, she texted Chambers that she had decided to "[l]et the legal system take its course."[4] In September 2019, the Philadelphia police charged Chambers by criminal complaint with four offenses: theft by

---

[4] T.C.O., 6/25/2021, at Ex. C-4.

unlawful taking, theft by deception, receiving stolen property, [5] and home improvement fraud.[6] After a preliminary hearing, all four charges were held for trial.[7]

---

[5]  18 Pa.C.S. § 3921(a)(1) ("A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof."); 18 Pa.C.S. § 3922(a)(1) ("A person is guilty of theft if he intentionally obtains or withholds property of another by deception." Deception occurs when a person intentionally "creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise."); 18 Pa.C.S. § 3925 ("A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.").

[6]  73 P.S. § 517.8. This statue lists eight ways in which a person can commit home improvement fraud. Only subsections (a)(1), (a)(2), and (a)(3) were charged in this case. Those subsections provide as follows:

> **(a) Offense defined.**--A person commits the offense of home improvement fraud if, with intent to defraud or injure anyone or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
>
>> (1) makes a false or misleading statement to induce, encourage or solicit a person to enter into any written or oral agreement for home improvement services or provision of home improvement materials or to justify an increase in the previously agreed upon price;
>>
>> (2) receives any advance payment for performing home improvement services or providing home improvement materials and fails to perform or provide such services or materials when specified in the contract taking into account any force majeure or unforeseen labor strike that would extend the time frame or unless extended by agreement with the owner and fails to return the payment received for such services or materials which were not provided by that date;
>>
>> (3) while soliciting a person to enter into an agreement for home improvement services or materials, misrepresents or conceals the contractor's or salesperson's real name, the name of the contractor's business, the contractor's business address or any other identifying information.

(continued…)

Shortly thereafter, the Commonwealth charged Chambers by criminal information with the same set of charges. On the home improvement fraud count, the Commonwealth cited subsection (a)(1) of the offense but, in the portion of the count describing the charge, the Commonwealth used language from subsections (a)(1), (a)(2), and (a)(3). Concerned that the discrepancy between the citation and the language would cause confusion, the Commonwealth filed a "Motion to Amend/Correct Bills of Information" in which the Commonwealth clarified for Chambers and for the trial court that it was charging Chambers with three different forms of home improvement fraud, one each of subsections (a)(1), (a)(2), and (a)(3). The parties met in court on January 27, 2021, for Chambers' stipulated non-jury trial. Before the trial commenced, the trial court granted the Commonwealth's motion to amend the criminal information after defense counsel expressed "no objection" to it.[8] Thus, Chambers went to trial on six separate counts: one count of theft by unlawful taking, one count of receiving stolen property, one count of theft by deception, and three counts of home improvement fraud.

The parties stipulated to, and submitted for the court's review, the preliminary hearing transcript and various exhibits, including copies of the contracts, the two deposit checks, the fake business card, and the text messages between Thompson and Chambers. After consideration of these materials, and after hearing closing arguments, the trial court rendered its verdict. The court stated that Chambers was "guilty of theft by deception, [and] false statement to induce home improvement services. As to the remaining charges, the Court finds [Chambers] not guilty."[9] By its unambiguous verdict,

---

*Id.* § 517.8(a)(1)-(a)(3) (emphasis in original).

[7]     *See* Preliminary Hearing Transcript, 12/20/2019, at 38, 41.

[8]     *See* Notes of Testimony ("N.T."), Stipulated Non-Jury Trial, 1/27/2021, at 12.

[9]     N.T. at 39.

the court convicted Chambers only of theft by deception and subsection (a)(1) of the home improvement fraud statute.[10] However, shortly after announcing the verdict, the trial court placed the following findings of fact on the record, during which discussion the issue presently before this Court initially took root. Despite unmistakably convicting Chambers of only one form of home improvement fraud, under subsection (a)(1), the court alluded to facts that would support all three of the charged forms of home improvement fraud:

> Mr. Chambers had a written contract with Ms. Thompson to install carpets in multiple rooms for $800 and another for $175. It was a valid contract. Per Ms. Thompson's testimony, the work was to be done within the two to three day period. Which never happened. Ms. Thompson relied on the fact that Mr. Chambers had a valid contracting company and was a bona fide contractor. A Clear Search showed that there was no such business or company registered as Perfect Home Improvement Company which is an indication of intent to engage in a fraud. Also, Ms. Thompson was given a false business address by Mr. Chambers. And the check was cashed by [Mr. Chambers] that Ms. Thompson gave to him. [Mr. Chambers] did not start the job in a reasonable time. When Ms. Thompson called and text[ed] Mr. Chambers to ask him to do the job, he promised to do it but never followed up. [Mr. Chambers] never gave money back to Ms. Thompson in fact he never offered to give money back which is evidence of intent to commit a fraud. There was no proof that Mr. Chambers used any portion of the money that Ms. Thompson gave to him to buy supplies, the carpets or materials, and this evidence also shows intent to commit a fraud. After more than two months of inaction on the part of Mr. Chambers, [Ms.] Thompson called the police, at that point an arrest was made.

> Based upon the totality of the circumstances, there was more than mere nonperformance indicated to show Mr. Chambers inten[ded] to defraud Ms. Thompson. . . . [Mr. Chambers] intentionally withheld Ms. Thompson's money and created a false impression that he intended to install carpets at her house. Simply put, he took Ms. Thompson's money, did not do the job within a reasonable time and repeatedly broke promises to do the job over the course of two months. [Mr. Chambers] did not offer to give [Ms. Thompson] her money back, also there was no legitimate excuse for failing

---

[10]    *See* 73 P.S. § 517.8(a)(1) (defining home improvement fraud to encompass making "a false or misleading statement to induce, encourage or solicit a person to enter into any written or oral agreement for home improvement services or provision of home improvement materials or to justify an increase in the previously agreed upon price").

to do the job, nor was there any evidence that he had purchased any materials for the job.[11]

Although the court stated that Chambers accepted payments from Thompson without performing the work and without returning the payment, which facts would have supported a conviction under subsection (a)(2),[12] and that Chambers misrepresented the existence and address of his business, which fact would have supported a conviction under subsection (a)(3),[13] the court did not amend or modify the verdict. Instead, the trial court proceeded directly to sentencing,[14] and imposed a sentence that deviated from its stated verdict.[15] Notwithstanding having convicted Chambers of *two* crimes, the trial court sentenced Chambers to eleven and one-half to twenty-three months in jail "to run concurrently on the *three* charges."[16] Adding further confusion, the court tacked on a one-year period of probation to the *singular* "felony [home improvement fraud ]charge, consecutive to the jail portion of the sentence."[17]

---

[11]  N.T. at 39-41.

[12]  *See* 73 P.S. § 517.8(a)(2) (stating that home improvement fraud occurs whenever a contractor "receives any advance payment for performing home improvement services . . . and fails to perform or provide such services or materials when specified in the contract . . . and fails to return the payment received for such services or materials which were not provided by that date").

[13]  *Id.* § 517.8(a)(3) (defining home improvement fraud to include the situation in which a contractor, "while soliciting a person to enter into an agreement for home improvement services or materials, misrepresents or conceals the contractor's or salesperson's real name, the name of the contractor's business, the contractor's business address or any other identifying information").

[14]  Both parties consented to sentencing occurring immediately after trial. N.T. at 42.

[15]  *Id.* at 54-55.

[16]  *Id.* (emphasis added).

[17]  *Id.* at 55.

Immediately after the trial court imposed the sentence, Chambers' attorney asked the court if he could "advise" Chambers on the record.[18] The court consented, and Chambers' counsel then informed Chambers of the following:

> Reverend Chambers, today you were convicted of home improvement fraud and theft by deception in front of the Honorable John R. Padova, Jr. He sentenced you on those convictions to a concurrent period of 11 and a half to 23 months of incarceration, with credit for time served . . . . And you are not to be paroled until the full restitution of $975 is made to the complaining witness. And you have a one year probation tail on the felony, meaning the one year of probation will come after the completion of the 23 month sentence. . . . [19]

Counsel's recap referenced only one count of home improvement fraud and only one felony, which was consistent with the verdict as the court pronounced it. Notably, the trial court did not attempt to correct or clarify counsel's recitation of the verdict.

The trial court issued a written sentencing order later that day that—unbeknownst to Chambers or his attorney—imposed separate, concurrent eleven and one-half to twenty-three month jail sentences on *four* counts, one for the theft by deception and one each for all three subsections of home improvement fraud.[20] On February 16, 2021, Chambers, having paid the full amount of restitution and believing that he had served the minimum sentence, filed a motion for parole with the trial court. On February 19, 2021, Chambers filed a notice of appeal. Then, on February 21, 2021, the trial court granted Chambers' motion for parole.

In response to Chambers' notice of appeal, the trial court directed Chambers to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). In his concise statement, Chambers maintained that the trial court's *sua sponte*, off-the-

---

[18]     *Id.* at 57.

[19]     *Id.*

[20]     *See* Judgment of Sentence, 1/27/2021; Chambers' Br., Ex. F.

record modification of the verdict and its imposition of four separate sentences violated his double jeopardy rights under the state and federal constitutions.[21] Chambers explained that, had the court stated in open court that it was imposing four sentences instead of two, counsel would have objected and raised the double jeopardy claim. However, because the addition of two offenses occurred after the proceedings had adjourned, counsel was not aware of the court's action until he reviewed the record and transcripts while preparing Chambers' concise statement. Counsel could not have objected on the record. Thus, Chambers contended, he was entitled to raise the issue in the first instance in his concise statement. Moreover, Chambers asserted that the imposition of multiple punishments for one offense implicates the legality of his sentence, is non-waivable, and can be raised at any time.[22]

On June 25, 2021, the trial court issued its Rule 1925(a) opinion. The trial court admitted that it "could have articulated its guilty verdict in greater detail."[23] The inexactitude notwithstanding, the court explained that it was "unmistakably clear from the record as a whole" that the court intended to convict Chambers of all three forms of home improvement fraud.[24] The on-the-record verdict, the court stated, was simply a mistake. The court rationalized its switch by emphasizing that, in its post-verdict, on-the-record findings of fact, it had addressed facts relevant to all three forms of home improvement fraud and, thus, "made it abundantly clear that [Chambers] was guilty of § 517.8(a)(1), (2), and (3)."[25] As such, the court explained, Chambers "cannot reasonably argue" that

---

[21] *See* Concise Statement, 4/5/2021, at 4-6; *see* U.S. CONST. amend. V.; PA. CONST. art 1, § 10.

[22] *See* Concise Statement, 4/5/2021, at 7.

[23] T.C.O. at 8.

[24] *Id.*

[25] *Id.*

he cannot be sentenced on all three counts of home improvement fraud.[26]  Any such argument "has no merit and is belied by the record," the court held.[27]

A divided panel of the Superior Court affirmed, issuing a non-precedential memorandum.[28]  Before the intermediate court, Chambers argued that the incongruity between the trial court's verdict rendered at the conclusion of trial and the sentences imposed in the written sentencing order violated his constitutional protection against double jeopardy, as well as his constitutional rights to counsel and due process.  After setting forth the principle that, when "a court's oral statements conflict with a written sentencing order, there is a rebuttable presumption that the written order controls,"[29] the panel majority examined the relevant events as they unfolded below.  The majority faulted Chambers for viewing these events "in isolation," instead of "in context – taking into account the court's on-the-record findings in support of the verdict within minutes of the disputed statement, and its sentencing order issued that same day."[30]  Viewed in this manner, "the record paints a different picture" than the one drawn by Chambers.[31]  The panel majority noted that the trial court's factual findings closely tracked the language of subsections (a)(2) and (a)(3) of the home improvement fraud statute, which evinced the court's intent to convict Chambers of all three fraud counts.  And the fact that the trial court issued the written sentencing order so quickly after the verdict was "strong evidence

---

[26]  *Id.* at 9.

[27]  *Id.* at 7.

[28]  *Commonwealth v. Chambers*, 424 EDA 2021, 2022 WL 4476587, *6 (Pa. Super. Sept. 27, 2022) (unpublished).  Judge McLaughlin authored the majority memorandum, which Judge King joined.

[29]  *Chambers*, 2022 WL 4476587, at *4 (citing *Commonwealth v. Kremer*, 206 A.3d 543, 548 (Pa. Super. 2019)).

[30]  *Id.*

[31]  *Id.*

that the court meant to find Chambers guilty of all three subsections charged but misspoke on the record."[32]

Although the verdict did not match the judgment of sentence, the panel majority emphasized that "this is not a situation where the court altered its verdict after its entry."[33] Instead, the record here, when "viewed as a whole," demonstrates that the trial court intended to find Chambers guilty of three counts of home improvement fraud, even though it found Chambers guilty of only one in its stated verdict.[34] Thus, because "the court found him guilty" of three home improvement fraud counts and one theft by deception count, the court did not violate Chambers' constitutional rights when it imposed four separate sentences.[35]

Chambers also argued that the home improvement fraud statute defines a single offense, and that the various subsections are relevant for grading purposes only. As such, he maintained, the imposition of multiple convictions and sentences violated his double jeopardy rights. The panel majority rejected this argument as well, noting that each of Chambers' convictions was based upon the trial court's determinations that he committed separate acts. For instance, the court found that Chambers made false and misleading statements, a violation of subsection (a)(1) of the home improvement fraud statute. The court further found that Chambers took an advance payment from Thompson without doing the work or returning the payment, a violation of subsection (a)(2), and lied about the existence and address of his business, a violation of subsection (a)(3). This was not a situation in which a defendant was subjected to multiple convictions based

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

upon "different forms of proof for a single criminal act."[36]  Nor was this a situation, the court held, where the Commonwealth used the same proof to establish multiple convictions.  "[E]ach subsection contains different elements and the Commonwealth established guilt of each with different evidence."[37]  Thus, the majority found no double jeopardy violation.

Judge Dubow dissented.  In her view, the trial court illegally sentenced Chambers when it imposed three sentences for home improvement fraud notwithstanding the fact that it had only convicted him of one count of that offense, particularly inasmuch as the trial court did not attempt to amend or modify the verdict.[38]  Judge Dubow observed that the majority had premised its analysis upon the axiom that, when there is a conflict between a sentence as articulated in open court and the subsequently executed written order, a rebuttable presumption arises that the written order reflects the correct and intended sentence.[39]  However, Judge Dubow stressed, the presumption has no applicability here.  It only operates, she explained, when there is a discrepancy between two *sentencing* orders.  "This presumption does not apply to a conflict between the verdict the trial court states in open court and the sentencing order."[40]

Judge Dubow drew heavily upon the Superior Court's analysis in *Commonwealth v. Farinella*,[41] in which a panel of that court reversed a trial court that had attempted to

---

[36]     *Id.* at *5 (distinguishing this case from *Commonwealth v. Given*, 244 A.3d 508, 510 (Pa. Super. 2020) (holding that "a defendant should not be subject to separate sentences for multiple convictions [for DUI], where the defendant committed a single act of driving [under the influence of a controlled substance]")).

[37]     *Id.*

[38]     *Chambers*, 2022 WL 4476587, at *6 (Dubow, J., dissenting).

[39]     *Id.* at *7 (citing *id.* at *4).

[40]     *Id.* (footnote and citations omitted).

[41]     887 A.2d 273 (Pa. Super. 2005).

alter its verdict.  There, after a non-jury trial, the trial court convicted Farinella of aggravated assault and simple assault.[42]  At sentencing, the court announced its findings of fact, which provided justification only for simple assault.  The trial court *sua sponte* modified its earlier verdict to "reflect [its] findings of fact," and found Farinella not guilty of aggravated assault.[43]  On the Commonwealth's appeal, a panel of the Superior Court reversed the court's alteration of its initial verdict.  The panel held that, because "the pronouncement in open court was not ambiguous and, upon its face . . . was proper," the trial court could not correct or modify the verdict.[44]  In explaining its holding, the *Farinella* panel reasoned that:

> [O]nce announced in open court, and certainly once entered upon the docket, the court's verdict was the same as if rendered by a jury.  The fact that it was the court that reached the verdict did not make the verdict less firm than a jury verdict, nor did it make it malleable and capable of later revision by the court.  Consequently, unless the verdict was flawed in some fashion that relegated it subject to attack, the court had no more power to change the verdict than it would have had in a jury trial.[45]

Judge Dubow concluded that the trial court in the instant case had no more authority to amend the verdict than the court in *Farinella*.  Here, the court "unambiguously declared in open court that it was convicting Chambers of one count of home improvement fraud and not guilty of the remaining charges."[46]  The court never announced in open court that it was altering its verdict to include two additional counts of home improvement fraud.  The court had no authority to wait until the sentencing order

---

[42]     *Id.* at 274.

[43]     *Id.* at 274-75.

[44]     *Id.* at 275-76.

[45]     *Id.* at 275 (citations omitted).

[46]     *Chambers*, 2022 WL 4476587, at *7 (Dubow, J., dissenting) (cleaned up).

to change the verdict and to tack on additional convictions. Consequently, Judge Dubow would have vacated the convictions and sentences added in the judgment of sentence and would have remanded for resentencing on the verdict as originally rendered.[47]

On April 18, 2023, we granted *allocatur* on the following question:

> When a judge orally renders a guilty verdict on an offense by name only, and "not guilty" as to the remaining charges, may a reviewing court ignore the judge's express words and rely on the written sentencing order and the record as a whole to determine which charged offenses the judge intended to include within the conviction, and does doing so violate the double jeopardy protections of the Pennsylvania and Federal Constitutions?[48]

By attacking his written judgment of sentence on double jeopardy grounds, Chambers challenges the legality of his sentence. In *Commonwealth v. Prinkey*,[49] this Court identified four broad categories of illegal sentences, one of which concerns a claim alleging "a violation of a substantive restriction that the Constitution places upon a court's power" to impose that particular sentence.[50] "If either the United States Constitution or the Pennsylvania Constitution places a restriction upon the power of a court to impose a particular sentence in certain circumstances, and if the appellant's claim is that those circumstances exist in his or her case, then the challenge necessarily sounds in legality."[51] By way of example, we spotlighted *Commonwealth v. Hill*,[52] in which this Court held specifically that a challenge to a sentence on double jeopardy grounds

---

[47] *Id.* at *8.

[48] *Commonwealth v. Chambers*, 286 EAL 2022, 296 A.3d 559 (Pa. 2023) (per curiam).

[49] 277 A.3d 554, 562-63 (Pa. 2022).

[50] *Id.* at 562.

[51] *Id.* at 562-63.

[52] *Id.* at 563 (quoting *Commonwealth v. Hill*, 238 A.3d 399, 409 (Pa. 2020)).

constitutes a legality challenge, because, if the claim was "correct, then a trial court is constitutionally prohibited from"[53] imposing a second or subsequent sentence. Thus, Chambers' double jeopardy argument constitutes a non-waivable challenge to the legality of his sentence.[54]

Both the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution safeguard against "multiple punishment for the same offense at one trial."[55] The prohibition on double jeopardy preserves the "finality and integrity of judgments and the denial to the prosecution of 'another opportunity to supply evidence which it failed to muster in the first proceeding.'"[56] The proscription of second-chance prosecutions "prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction."[57] "Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance."[58]

Our Double Jeopardy clauses "attach[] special weight to judgments of acquittal."[59] "A verdict of not guilty, whether rendered by the jury or directed by the trial judge,

---

[53] *Hill*, 238 A.3d at 409 (cleaned up).

[54] *See Commonwealth v. Smith*, 598 A.2d 268, 270 (Pa. 1991) ("[C]laims concerning illegality of the sentence are not waivable.").

[55] *See Commonwealth v. Mills*, 286 A.2d 638, 641 (Pa. 1971). The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Article I, Section 10 of the Pennsylvania Constitution similarly states that "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb." PA. CONST. art. 1, § 10.

[56] *Commonwealth v. Edwards*, 272 A.3d 954, 969 (Pa. 2022) (quoting *United States v. DiFrancesco*, 449 U.S. 117, 128 (1980) (cleaned up)).

[57] *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

[58] *Id.* at 41-42 (citing *Green v. United States*, 355 U.S. 184, 187-88 (1957)).

[59] *Id.* at 41 (footnote and citations therein omitted).

absolutely shields the defendant from retrial."[60]  Similarly, an "acquittal, whether based on a verdict of not guilty or on a ruling by the court that the evidence was insufficient to convict, may not be appealed."[61]  A defendant is "acquitted" when the "ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged."[62]

For these (and other) reasons, the Supreme Court of the United States has declared that "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.'"[63]  "The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is 'based upon an egregiously erroneous foundation.'"[64]  In other words, the rule applies even when the acquittal patently and obviously was incorrect, or was contrary to the fact-finder's intentions.  An acquittal is "insulated from further review"[65] and necessarily is the definitive end of the prosecution for that charge.  There can be no appeals or retrials on that charge.  And, thus, it is axiomatic that one also cannot be sentenced on a crime for which he was acquitted.

This case now turns on whether the trial court's on-the-record judgment—as stated—constituted a final verdict, or whether the court had the authority later to reform

---

[60]     *Id.* (footnote and citations therein omitted).

[61]     *Commonwealth v. Gibbons*, 784 A.2d 776, 778 (Pa. 2001) (citation omitted).

[62]     *Id.* (quoting *Commonwealth v. McDonough*, 621 A.2d 569, 573 (Pa. 1993)).

[63]     *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977) (quoting *United States v. Ball*, 163 U.S. 662, 671 (1896)).

[64]     *Sanabria v. United States*, 437 U.S. 54, 64 (1978) (quoting *Fong Foo v. United States*, 369 U.S. 141, 143 (1962)).

[65]     *Commonwealth v. Rawles*, 462 A.2d 619, 621 (Pa. 1983) (citation omitted).

that verdict to align it with the court's (assertedly) true intentions. If the in-court verdict was, by law, final and unalterable, then double jeopardy principles necessarily prohibit the sentences for the two supplemental counts of home improvement fraud. We conclude that the court did not have that authority in this case, and that the contested sentences are therefore illegal.

In a bench trial, "the trial judge shall determine all questions of law and fact and render a verdict which shall have the same force and effect as a verdict of a jury."[66] This rule, we have held, "restricts the trial judge's authority over the verdict in a nonjury trial to one which is no greater than his or her authority over a jury verdict."[67] The fact that a "court . . . reached the verdict did not make the verdict less firm than a jury verdict, nor did it make it malleable and capable of later revision by the court."[68] Instead, a court's authority over a jury verdict is limited to "consideration of postverdict motions in arrest of judgment or the granting of a new trial."[69]

In *Stark*, at the conclusion of a non-jury trial, the trial court found the defendant guilty of terroristic threats and not guilty of simple assault, and proceeded directly to sentencing.[70] When the Commonwealth sought a deadly weapon enhancement and a prior record score of thirteen, the trial court, which believed that the case should have been resolved at the magisterial level, accused the prosecutor of fabricating information

---

[66]    Pa.R.Crim.P. 621.

[67]    *Commonwealth v. Stark*, 584 A.2d 289, 290 (Pa. 1990) (citing *Commonwealth v. Meadows*, 369 A.2d 1266 (Pa. 1977)).

[68]    *Farinella*, 887 A.2d at 275 (citing *Commonwealth v. Melechio*, 658 A.2d 1385, 1387 (Pa. Super. 1995) ("The authority of a trial court over a nonjury verdict is no greater than the authority over a jury verdict.")).

[69]    *Stark*, 584 A.2d at 290 (citing *Commonwealth v. Parker*, 451 A.2d 767 (Pa. Super. 1982)).

[70]    *Id.*

and wasting taxpayer resources on the case.  The prosecutor attempted to justify the prior record score, but the trial court only became more irritated.  The court stated, "You're asking for a directed verdict?  Not guilty; all right?  If you want to play that game, not guilty; okay?  Don't play games with me."[71]  The Commonwealth appealed the trial court's abrupt and unprompted reversal of its guilty verdict on the terroristic threats charge.

The trial court and the Superior Court construed the trial court's ruling as a *sua sponte* grant of a motion for an arrest of judgment.[72]  This Court disagreed with that characterization.  A motion for an arrest of judgment concerns the sufficiency of the evidence.  But that is not why the trial court changed the verdict, "[s]ince the record reveal[ed] that the trial judge changed this verdict for reasons unrelated to the sufficiency of the evidence or causes appearing on the face of the record."[73]  Relying in large part upon Rule 621 of the Rules of Criminal Procedure, we held that the court had exceeded "the authority which a trial judge may properly exercise over a verdict."[74]  Rather than considering a post-verdict motion or motion for new trial, the trial court had reversed its own guilty verdict.  Under Rule 621, the court had no more power to change its own verdict than it would have had to change a jury verdict.  "Discomfort by a trial judge during a sentencing proceeding . . . does not form a basis for any authorized action by that trial judge."[75]  Thus, we deemed the altered verdict to be a legal nullity, and we reinstated the original guilty verdict.

---

[71]     *Id.*

[72]     *Id.* at 291.

[73]     *Id.*

[74]     *Stark*, 584 A.2d at 291.

[75]     *Id.*

That said, a trial court can modify a verdict entered in error if it does so *immediately*. In *Commonwealth v. Johnson*,[76] a jury found the defendant not guilty of murder, a verdict that the trial court immediately believed to be mistaken.[77] The court accepted the verdict and dismissed the jury. The next day, the prosecutor informed the trial court that the verdict may have been the product of intimidation and asked the court to poll the jury. The court reconstituted the jury and asked the jury for its "real and complete verdict."[78] Through its foreperson, the jury stated that its true verdict was guilty of voluntary manslaughter, and not guilty of first-degree murder. The court polled the jurors, each of whom confirmed that this was their true verdict. The trial court accepted the day-after verdict and sentenced the defendant for voluntary manslaughter.[79]

Citing the well-established rule that a jury cannot be impeached, nor can its verdict be altered or amended after the jury has been discharged, this Court reversed. We explained that a patent mistake in a verdict can be corrected, but this must be done "immediately."[80] "To permit an alteration after the jury are dismissed, would lead to great abuses."[81] We noted that the jury had ample time to correct the verdict after that verdict was announced in open court. The jurors heard the verdict, and none of them attempted to correct it. Once the verdict was announced and recorded, "the Commonwealth's opportunity to bring to light the hidden verdict was gone forever."[82] The jury, and the court

---

[76]    59 A.2d 128 (Pa. 1948).

[77]    *Id.* at 129.

[78]    *Id.*

[79]    *Id.*

[80]    *Id.* at 130.

[81]    *Id.* (quoting *Walters v. Junkins*, 16 Serg. & Rawle. 414, 415 (Pa. 1827)).

[82]    *Id.* at 131.

for that matter, "had no more legal right to alter the recorded verdict which they as jurors had rendered on the preceding day than would a man who retired from the presidency of the United States at the end of his term have, on the day after his retirement, to alter the text of an official document which he as President had executed on his last day in office."[83]

There are circumstances in which a court has the power to remedy certain types of verdict errors after some time has passed, but the burden for justifying such an action is very high. In "extremely exceptional cases," a court can fix patent and obvious clerical errors, or an error that occurs when transcribing the verdict, but such cases "must be approached with caution."[84] In *Commonwealth v. Huett*, after a bench trial, the trial court pronounced the defendant guilty of second-degree murder and a firearms offense. The clerk recorded the verdicts on the criminal information, which the trial judge signed. However, that information erroneously indicated that the court had found the defendant guilty of voluntary manslaughter, not second-degree murder.[85]

The case was assigned to another judge for sentencing. During post-trial proceedings, numerous references were made to voluntary manslaughter, to which the prosecutor made no objection or correction. The prosecutor did not claim error until after the trial court sentenced the defendant, insisting that the oral verdict, not the one on the information, controlled. The prosecutor then filed a motion to correct the verdict as imposed on the criminal information to coincide accurately with the verdict pronounced in court. At a hearing on the motion, the trial court's clerk testified that, although she did not remember with any certainty, she believed that she may have written down the wrong verdict on the information. The substitute trial judge granted the motion and ordered the

---

[83]     *Id.*

[84]     *Commonwealth v. Huett*, 341 A.2d 122, 124 (Pa. 1975).

[85]     *Id.* at 122.

criminal information to be corrected.  The defendant was then sentenced for second-degree murder.[86]

On appeal, this Court emphasized that a court can amend or modify a rendered verdict only in "extremely exceptional cases"[87] when the verdict does not reflect the "obvious intention" of the fact-finder.[88]  That is, only when the proper verdict is "unquestionable,"[89] *i.e.*, when there is no doubt that the verdict actually rendered does not match what was "informally or improperly stated in writing," can a court correct a verdict.[90]  This, we explained, entails a "heavy burden."[91]  The *Huett* Court held that the Commonwealth had not produced sufficient evidence to prove that the substituted verdict represented the "unquestionable" intent of the original trial judge.  The Commonwealth called only one witness, the clerk, who could not remember recording an incorrect verdict.  The Commonwealth failed to call the trial stenographer to verify that she did not make a mistake transcribing the initial verdict.[92]  Most importantly, the original trial judge—the only person who could testify absolutely as to which verdict reflected the true intention of the finder-of-fact—did not testify.  In light of the Commonwealth's heavy burden to prove that the recorded verdict improperly stated the verdict actually rendered, the trial judge's

---

[86]     *Id.* at 123-24.

[87]     *Id.* at 124 (quoting *Commonwealth v. Dzvonick*, 297 A.2d 912, 914-15 (Pa. 1972)).

[88]     *Id.*

[89]     *Id.* (quoting *Commonwealth v. Homeyer*, 94 A.2d 743, 748 (Pa. 1953)).

[90]     *Id.* (quoting *Dzvonick*, 297 A.2d at 914-15).

[91]     *Id.*

[92]     *Id.* at 124.

testimony was "essential."[93]  Thus, this Court reimposed the sentence for voluntary manslaughter.[94]

The law is clear that, once a verdict is rendered, a court's authority to alter that verdict is severely circumscribed.  An ambiguous[95] or mistaken verdict may be susceptible to correction, but typically it must be corrected immediately, lest the authority to fix the error be lost forever.[96]  Thus, for example, if a trial court misspeaks, but corrects that misstatement seconds later, the court has run afoul of no law.  As well, an obvious and indisputable clerical or transcription error can be corrected, even if time has passed, but only in extremely rare cases, and only when the moving party satisfies the lofty *Huett* burden.[97]  "[U]nless the verdict was flawed in some fashion that relegated it subject to attack,"[98] once the verdict is announced and recorded, a trial court has no authority to *sua sponte* take any remedial or corrective actions.  Otherwise, only upon the "consideration of postverdict motions in arrest of judgment or the granting of a new trial" will a court be

---

[93]    *Id.*

[94]    *Id.* at 125.  *But see Commonwealth v. Williams*, 519 A.2d 971, 973-74 (Pa. 1986) (permitting a verdict to be modified upon sufficient evidence of a clerical error, based on the evidence of the trial court's intent and trial court's explanation of the error).

[95]    *See Farinella*, 887 A.2d at 275-76 (suggesting that an ambiguous nonjury verdict may be subject to amendment).

[96]    *Johnson*, 59 A.2d at 131.

[97]    *See Huett*, 341 A.2d at 124.

[98]    *Farinella*, 887 A.2d at 275 (citing *Commonwealth v. Fitten*, 657 A.2d 972 (Pa. Super. 1995)).

vested with the power to alter a verdict, once rendered.[99]  Neither "discomfort"[100] nor unstated, generalized intentions can expand a court's authority over a verdict.

The appeal at bar is not one of the "extremely exceptional cases"[101] in which a modification of a verdict is permitted.  The initial verdict was not flawed in any way.  The verdict was unequivocal and unambiguous.  The court expressed neither hesitation nor confusion, nor did the court immediately attempt to correct what it subsequently came to believe was a mistake.  To the contrary, the court did nothing even to suggest that the verdict was incorrect, let alone attempt to correct it.  The court then sat silent when Chambers' counsel summarized the initial verdict on the record.  There is nothing in the record to indicate that the court's revised verdict was its "obvious intention,"[102] or that the initial verdict was the product of some obvious clerical error.

The trial court's reversal did not come until later that day, in a written order.  This was not an immediate correction in open court with the parties present.  Nor was the change made in response to a motion from either party.  The court's hindsight justifications are unavailing, and are precluded by Pennsylvania law.  That the trial court may have privately intended a different verdict, or that its findings of fact would have supported that different verdict, are insufficient to justify its actions.  Even where a court's intention to render a different verdict is unquestionable and obvious, that intent is relevant only to correct a patently obvious clerical or transcription error in connection with the recording of that verdict.  Merely expressing that the court meant or intended something

---

[99]    *Stark*, 584 A.2d at 290 (citing *Commonwealth v. Parker*, 451 A.2d 767 (Pa. Super. 1982)).

[100]    *Id.* at 291.

[101]    *Huett*, 341 A.2d at 124 (quoting *Dzvonick*, 297 A.2d at 914-15).

[102]    *Id.*

else is insufficient to satisfy the "heavy burden"[103] necessary to allow a verdict to be substituted.

In *Farinella*, our Superior Court addressed, and rejected, a trial court's similar *post-hoc* rationalizations for changing an unambiguous verdict. There, following a bench trial, the trial court found the defendant guilty of aggravated assault, simple assault, and recklessly endangering another person, and not guilty of attempted murder.[104] Notably, the court did not identify the grading of its aggravated assault verdict. Later, at sentencing, the defendant asked that it be graded as a second-degree felony, while the prosecutor requested it be graded as a first-degree felony. The court agreed with the defendant and graded the crime as a second-degree felony.[105]

The prosecutor objected and attempted to get the trial court to identify findings of fact that would justify the modified verdict. Instead of justifying the second-degree felony classification, the trial court changed its verdict again, this time finding the defendant not guilty of aggravated assault. The prosecutor objected, and then appealed. The Superior Court reinstated the "perfectly valid" initial verdict.[106] In doing so, the intermediate court rejected the trial court's explanation that it was merely correcting an error in the verdict and that the latter verdict "was merely a correction to reflect [the court's] findings of fact."[107] These *post-hoc* justifications were irrelevant, the Superior Court held, when the initial verdict was "proper" and not "ambiguous."[108] The court accurately noted that

---

[103]    *Id.*

[104]    *Farinella*, 887 A.2d at 274.

[105]    *Id.*

[106]    *Id.* at 276.

[107]    *Id.* at 275.

[108]    *See id.* at 275-76.

Pennsylvania law does not require "consistency between [factual] findings and the ultimate verdict rendered."[109] It is not even "necessary that a verdict be consistent with other verdicts rendered in the same trial."[110] Once a verdict has been validly rendered, there is no basis to "look behind" the verdict to the "factfinder's reasoning or specific findings of fact."[111]

The *Farinella* court's reasoning applies with full force here. As noted above, there was nothing defective or ambiguous about the trial court's verdict. Thus, the law affords no basis for the court subsequently to attempt to mold that verdict to its findings of fact, or to its intentions or beliefs. A valid verdict does not mutate into an invalid one simply because it does not conform to the particulars of a trial court's findings of fact. A trial court's desire for consistency between the facts and the verdict does not bestow upon that court powers that it otherwise does not possess. As in *Farinella*, that the trial court provided justification for all three charged subsections of home improvement fraud in its findings of fact did not give the court permission to change its original verdict.

Consequently, the Superior Court erred when it insisted upon evaluating the verdict "in context – taking into account the court's on-the-record findings in support of the verdict within minutes of the disputed statement."[112] The initial verdict was valid, regardless of whether "the record paint[ed] a different picture."[113] It does not matter that the trial court's factual findings closely tracked the language of subsections (a)(2) and (a)(3) of the home improvement fraud statute, nor does it matter how close in time to the

---

[109]    *Id.* at 276.

[110]    *Id.* (citation omitted).

[111]    *Id.* (citations omitted).

[112]    *Chambers*, 2022 WL 4476587, at *4*.

[113]    *Id.*

verdict those factual findings were announced. These factors may, in fact, be "strong evidence that the court meant to find Chambers guilty of all three subsections charged."[114] But those factors are irrelevant after a valid verdict is rendered. Simply put, "[p]ost-trial, the court cannot re-deliberate as it is no longer the fact finder."[115]

The Superior Court's examination of the propriety of the verdict was flawed from its inception. The court built its analysis upon the basic premise that, when "a court's oral statements conflict with a written sentencing order, there is a rebuttable presumption that the written order controls."[116] The problem, as Judge Dubow pointed out in dissent, is that this presumption applies only when there is a conflict between the on-the-record and the written *sentencing* pronouncements. In that limited circumstance, it is true that the later, written order controls. But that did not happen here. The discrepancy in this case is between the crimes for which Chambers was *convicted* and those for which he was *sentenced*, not between two sentencing pronouncements. The presumption is therefore inapplicable in this case.

Finally, we note that the trial court also could not have altered or modified its verdict under 42 Pa.C.S. § 5505, which permits a court, "upon notice to the parties," to "modify or rescind any order" within thirty days of its issuance if no appeal has been taken. Not only did the trial court here not provide notice to either party, but the rule is also limited by its opening clause, "[e]xcept as otherwise provided or prescribed by law."[117] As demonstrated above, Rule 621 and Pennsylvania precedents clearly prohibit a trial court from *sua sponte* changing a verdict from not guilty to guilty, except in extraordinary

---

[114] *Id.*

[115] *Commonwealth v. Robinson*, 33 A.3d 89, 94 (Pa. Super. 2011).

[116] *Chambers*, 2022 WL 4476587, at *4 (citing *Kremer*, 206 A.3d at 548).

[117] 42 Pa.C.S. § 5505.

circumstances. Section 5505's limiting language supersedes any authority afforded by the rule in cases like this one.[118]

Here, there was nothing flawed or ambiguous about the court's initial verdict. Nor was the court responding to a motion for an arrest of judgment or for a new trial. As such, the trial court had no more authority to modify its verdict than it would have had to modify a jury's verdict. Lacking such authority, the initial acquittals on two of Chambers' home improvement fraud counts were final and "insulated from further review."[119] Those acquittals cannot be appealed, nor can the Commonwealth retry Chambers on those counts. Because the court lacked the power *sua sponte* to reverse the acquittals, the court also lacked the legal authority as a matter of double jeopardy to sentence Chambers on those counts.

The Superior Court's order is reversed, and the judgment of sentence is vacated. We remand this case to the Superior Court, with instructions to direct the trial court to resentence Chambers in accordance with this opinion.

Chief Justice Todd and Justices Donohue, Dougherty, Mundy, Brobson and McCaffery join the opinion.

---

[118] *See Robinson*, 33 A.3d at 92 (citing *Commonwealth v. Parker*, 451 A.2d 767 (Pa. Super. 1982)).

[119] *Rawles*, 462 A.2d at 621 (citation omitted).